UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KIMBERLY S. CROMWELL, et al.,

        Plaintiffs,

    v.

CERTIFIED FORENSIC LOAN
AUDITORS, et al.,

        Defendants.

Case No. 17-cv-02429-DMR

**REPORT AND RECOMMENDATION
GRANTING DEFENDANT ANDREW P.
LEHMAN'S MOTION TO SET ASIDE
CLERK'S ENTRY OF DEFAULT AND
DENYING PLAINTIFFS' MOTION
FOR DEFAULT JUDGMENT**

Re: Dkt. No. 36, 40

Plaintiffs Kimberly Cromwell and William Paatalo filed this copyright lawsuit against Defendants Andrew P. Lehman and Certified Forensic Loan Auditors ("CFLA"). Mr. Lehman, who is self-represented, moves to set aside the default entered against him. [Docket No. 36 (MSA).] Plaintiffs move for entry of default judgment against CFLA and Mr. Lehman. [Docket No. 40 (MDJ).] The court held a hearing on August 30, 2018 on the motion to set aside default, and on November 8, 2018 for the motion for default judgment. At the November 8, 2018 hearing, the court ordered supplemental briefing on damages and on service on CFLA. [Docket No. 69.] Plaintiffs filed a supplemental brief on November 30, 2018. [Docket No. 70 (Supp. Br.).]

Since all parties have not consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c), the court issues a Report and Recommendation and reassigns this case to a district judge for final disposition. For the reasons below, the court recommends that default be set aside as to Mr. Lehman. The court further recommends that Plaintiffs' motion for default judgment be denied as to both Defendants.

//

//

## I.      REQUESTS FOR JUDICIAL NOTICE

Plaintiffs filed two requests for judicial notice.  The first is in support of the motion for default judgment.  [Docket No. 39 (RJN).]  It seeks judicial notice of CFLA's registration as a limited liability corporation with the California Secretary of State and its initial Statement of Information.  The court recommends granting the RJN for the purpose of establishing the address of CFLA's agent for service of process, as discussed below.

Plaintiffs filed the second request for judicial notice in support of the opposition to Mr. Lehman's motion to set aside default. [Docket No. 42.]  The attached documents all relate to Plaintiffs' argument that the court has personal jurisdiction over Mr. Lehman.  The court does not reach that issue and therefore recommends that the request be denied as moot.

## II.     MOTION TO SET ASIDE DEFAULT

### A.      Background

Plaintiffs are co-owners of the eBook, "Pretender Lenders: How Table Funding and Securitization Go Hand in Hand." [Docket No. 1 (Compl.) ¶¶ 7-8.]  Ms. Cromwell holds the copyright to the eBook.  *Id.* ¶ 7.  CFLA is a California limited liability corporation that operates a website, http://certifiedforensicloanauditors.com website, which purports to be the "Nation's Leading Experts in Foreclosure Defense."  Mr. Lehman is an officer of CFLA.[1]  *Id.* ¶ 10; *see also* Docket No. 36-1 (Lehman Decl.) ¶ 2.

On April 27, 2017, Plaintiffs filed this copyright infringement lawsuit against Defendants arising out of their alleged unauthorized republication of the eBook on CFLA's website and Mr. Lehman's LinkedIn Profile.  Compl. ¶ 46.

On April 28, 2017, CFLA's administrative assistant, Melanie Paree, sent an e-mail to Plaintiffs in which she acknowledged the existence of the lawsuit, represented that Defendants had

---

[1] Mr. Lehman moves to set aside default against CFLA as well as himself.  At the hearing, the court explained to Mr. Lehman that he cannot represent the corporation.  *See Guifu Li v. A Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012 WL 2236752, at *4 (N.D. Cal. June 15, 2012) ("[W]hile pro se litigants can represent themselves, they cannot represent corporations, companies or other artificial entities.").  Accordingly, the court construes Mr. Lehman's motion as requesting to set aside the default only against him and recites the facts that pertain to his failure to respond to the complaint.

cured the copyright violation, and inquired whether there were additional copyright violations that they needed to cure. Docket No. 51 (Cromwell Decl.), Ex. 1; *Id.* ¶ 4. On April 30, 2017, Mr. Lehman sent an e-mail to Plaintiffs stating that CFLA intended to file a Rule 11 sanctions motion against Plaintiffs unless the lawsuit was dismissed. He signed the e-mail "Andrew Lehman, J.D."[2] Cromwell Decl., Ex. 2; *Id.* ¶ 5. Later that same day, he sent another e-mail to Plaintiffs in which he stated that he had not "seen the lawsuit," but that "[a]n attorney friend of [his] read some portions thereof and said that many of the claims for damages were outlandish." *Id.*, Ex. 2. Mr. Lehman then made a settlement proposal to Plaintiffs. *Id.* The parties briefly engaged in settlement negotiations, which were unsuccessful. Cromwell Decl., Ex. 3; *Id.* ¶¶ 6-7.

Plaintiffs attempted to serve Mr. Lehman with the summons and complaint in California, but were unsuccessful. [Docket No. 41 (MSA Opp.) at 6.] They then attempted service on Mr. Lehman in Texas. Cromwell Decl. ¶ 8. According to the Declaration of Diandra P. Puccetti, who is Plaintiffs' registered process server in Texas, on June 1, 2017, she went to the business address of CFLA at 2750 W. Main St., Suite C League City, TX 77573 to serve Mr. Lehman, but was told upon arrival that he was rarely in the office. Cromwell Decl., Ex. 4. She was given Mr. Lehman's business card, and was told that e-mail was the best way to contact him. *Id.* Puccetti e-mailed Mr. Lehman later that day, identified herself and advised him that she had paperwork to drop off to him, and provided her contact information. *Id.* Mr. Lehman sent a text message to Puccetti the same day stating the following: "Diandra. I live in Los Angeles why are you trying to serve me in Texas? I won't be back in Texas until later summer/fall. Andrew." *Id.* Puccetti replied that she would pass along the information to her company. *Id.*

On July 28 and 29, 2017, Plaintiffs attempted to serve Mr. Lehman at the business address listed on his business card, which is 13101 W. Washington Boulevard #444, Los Angeles, CA 90066. This attempt was unsuccessful. [Docket No. 19.] On August 9, 2017, Plaintiffs served Mr. Lehman via substituted service by leaving the summons, the complaint, and attached exhibits, civil

---

[2] Because "J.D." connotes legal training, the court asked Mr. Lehman about the credential at the hearing. Mr. Lehman stated that he obtained a J.D. through a California-based correspondence course, and is not a member of any bar.

coversheet, and order setting initial case management conference and ADR deadlines, with the person in charge, who was later identified as Marla Jimenez. *Id*.; *see also* Lehman Decl. According to Mr. Lehman, Ms. Jimenez is an employee of eOffices and has no relationship with him or CFLA. Lehman Decl. ¶¶ 6, 17. CFLA leased a mailbox from eOffices, Inc., which is located at 13101 W. Washington Boulevard, #444 Los Angeles, CA 90066. *Id*. ¶¶ 7, 15. On August 10, 2017, Plaintiffs mailed a copy of the papers to Mr. Lehman at the Los Angeles address. [Docket No. 19.]

On November 3, 2017, Plaintiffs moved for entry of default against Mr. Lehman. [Docket No. 26.] The Clerk entered default against Mr. Lehman on November 7, 2017. [Docket No. 28.]

According to Mr. Lehman, Ms. Jimenez did not send him the lawsuit-related papers until January 10, 2018 via Federal Express, which he did not receive until January 15, 2018. Lehman Decl., Ex. B. Mr. Lehman claims that January 15, 2018 was the first time he became aware of the lawsuit, including its factual bases and claims. Lehman Decl. ¶ 19.

On February 15, 2018, Mr. Lehman filed a motion for permission for electronic case filing, which the court granted on February 22, 2018. [Docket No. 32.] However, he did not complete his e-filing registration until sometime in July 2018 when he filed the motion to set aside the default. At the hearing, Mr. Lehman explained that his delays in taking action regarding the lawsuit resulted from the major disruptions caused by Hurricane Harvey, which hit Texas in August 2017.

On July 19, 2018, Mr. Lehman filed the instant motion to set aside the Clerk's entry of default. MSA. On July 26, 2018, Plaintiff filed a motion for default judgment against Mr. Lehman and CFLA. MDJ.

### B. Legal Standard

Rule 55(c) of the Federal Rules of Civil Procedure permits the court to "set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). To determine whether a party has shown good cause, the court must examine "'(1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3) whether reopening the default judgment would prejudice the other party.'" *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) ("*Mesle*") (brackets in original) (quoting *Franchise Holding II, L.L.C. v. Huntington Rests. Group, Inc.*, 375 F.3d 922, 925-

4

26 (9th Cir. 2004)) (quotation marks omitted). The moving party "[bears] the burden of showing that any of these factors favored setting aside the default." *Franchise Holding II, LLC.*, 375 F.3d at 926. "[T]his standard . . . is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." *Mesle*, 615 F.3d at 1091. However, "even if one of the factors goes against the defendant, the Court may still exercise its discretion and grant the motion." *Livingston v. Art.com, Inc*., No. 13-CV-03748-JSC, 2015 WL 4319851, at *2–3 (N.D. Cal. Apr. 17, 2015), report and recommendation adopted as modified, No. 3:13-CV-03748-CRB, 2015 WL 4307808 (N.D. Cal. July 15, 2015) (citing *Brandt v. Am. Bankers Ins. Co*., 653 F.3d 1108, 1112 (9th Cir. 2011)).

When performing this analysis, the court must remember that "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Mesle*, 615 F.3d at 1091 (quoting *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)) (quotation marks omitted). Additionally, "any doubt about the cause of default should be resolved in favor of the motion to set aside the default so that the case may be decided on its merits." *Livingston*, 2015 WL 4319851, at *2–3 (citing *O'Connor v. State of Nevada*, 27 F.3d 357, 364 (9th Cir. 1994)).

### C.     Analysis

Having considered all the factors, the court finds that they weigh in favor of setting aside the default.

#### 1.     Culpable Conduct

The court will consider a party's conduct culpable if it "has received actual or constructive notice of the filing of the action and intentionally failed to answer." *Mesle*, 615 F.3d at 1092 (citations and quotation marks omitted). In this context, "intentionally" means that the party "must have acted with bad faith, such as an intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process." *Id*. (citation and quotation marks omitted). A party is culpable "where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Id*. (citation and quotation marks omitted). Where the party is "legally sophisticated," the Ninth Circuit has held that in the context

of default, "an understanding of the consequences of its actions may be assumed, and with it, intentionality." *Mesle*, 615 F.3d at 1093; *see also Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc*., 840 F.2d 685, 690 (9th Cir. 1988) (defendant was "a lawyer, presumably . . . well aware of the dangers of ignoring service of process").

Mr. Lehman states that his failure to respond to the summons and the complaint was due to the fact that he had no knowledge of the lawsuit until January 15, 2018, after the Clerk had already entered default against him. At the hearing, he explained that during the relevant time period, he was still dealing with the aftermath of Hurricane Harvey in Texas. He further argues that he was not properly served under Federal Rule of Civil Procedure 4(d) because he was never personally served with the summons and the complaint. Plaintiffs argue that Mr. Lehman was on constructive notice of this lawsuit as early as April 30, 2017, but repeatedly dodged service in Texas and California. They assert that his failure to respond to the summons and the complaint was intentional and in bad faith.

Based on the record, the court finds that Mr. Lehman clearly knew about the lawsuit soon after it was filed in April 2017. On April 30, 2017, he sent e-mails to Plaintiffs in which he first threatened to file Rule 11 sanctions motions against them unless they dismissed the lawsuit and later made a settlement proposal. Cromwell Decl., Exs. 2, 3; *Id.* ¶¶ 5, 7. Additionally, on June 1, 2017, he sent a text message to Puccetti, Plaintiffs' process server, asking her why she was trying to "serve" him in Texas when he lived in Los Angeles. Cromwell Decl., Ex. 4. Mr. Lehman's assertions to the contrary in his declaration are disingenuous.

However, the record does not demonstrate that Mr. Lehman intentionally failed to answer. Although Mr. Lehman knew about the lawsuit, he did not attempt to evade service. In fact, when the process server tried to serve him in Texas, he explained that he lives in California, and that he would not be returning to Texas for a few months. This is inconsistent with someone who is trying to hide his location. Mr. Lehman did not have an obligation to answer until he properly was served. As discussed below, Plaintiffs effectuated substituted service in August 2017. Mr. Lehman asserts that service was not proper because they failed to personally serve him. Although he is incorrect about this, the record does not support that he took affirmative steps to avoid service.

United States District Court
Northern District of California

Federal Rules of Civil Procedure Rule 4(e) allows for service of an individual by delivering a copy of the summons and complaint to the individual personally, leaving a copy of the papers at the individual's dwelling "or usual place of abode" with someone of "suitable age and discretion who resides there," or by delivering a copy of the summons and complaint to an agent for service of process. Fed. R. Civ. P. 4(e)(2)(A)-(C). It also allows an individual to be served "following state law for serving a summons in an action brought in courts of general jurisdiction, where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).

California law allows for service of an individual by personally delivering a copy of the summons and the complaint to the individual or to a person authorized to receive service of process. Cal. Civ. Proc. Code §§ 415.10, 416.90. However, if personal service on the individual cannot be accomplished with "reasonable diligence," California law permits substituted service. Cal. Civ. Proc. Code § 415.20(b). "Ordinarily, . . . two or three attempts at personal service at a proper place should fully satisfy the requirement of reasonable diligence and allow substituted service to be made." *Espindola v. Nunez*, 199 Cal. App. 3d 1389, 1392 (1988) (quotations omitted). If reasonable diligence does not result in successful personal service, substituted service can be accomplished by delivering a copy of the summons and complaint "during usual office hours in [the defendant's] office" or "at [the defendant's] usual mailing address." Cal. Civ. Proc. Code § 415.20(a). The summons and complaint must be given to an individual "who is apparently in charge." *Id*. This individual must be 18 years old or older, and must be informed of the contents of the papers. *Id*. Thereafter, a copy of the summons and complaint must be mailed first-class, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left. *Id*. Service is complete on the tenth day after the mailing. *Id*.

Here, Plaintiffs properly served Mr. Lehman through substituted service. They made two unsuccessful attempts to personally serve him at the Los Angeles address on his business card. This satisfies the "reasonable diligence" requirement of Section 415.20(b). *See Espindola v. Nunez, supra*. After two failed attempts at personal service, on August 9, 2017, Plaintiffs left a copy of the summons and complaint with Jimenez, who is an individual 18 years or older, appeared to be in charge, and was informed of the contents of the papers. On August 10, 2017, Plaintiffs sent a copy

of the summons and complaint via first class mail with pre-paid postage to Mr. Lehman at the same address where they served Jimenez. Substituted service was completed ten days later pursuant to Section 415.20(b) of the California Civil Code of Procedure, on August 20, 2017.

Mr. Lehman appears to argue that the Los Angeles address is not a proper address for service because CFLA only maintains a mailbox at 13101 W. Washington Boulevard, #444 Los Angeles, CA 90066, and that any mail received at the mailbox is forwarded to CFLA's League City, TX address. Lehman Decl. ¶¶ 7, 15. He also contends that he spoke to an unidentified person at eOffices at some later unidentified date and obtained a three-month deferment in payment of rental fees due to Hurricane Harvey, which struck the Texas coastline on or about August 24, 2017 and forced him to shut down CFLA's League City office. He asserts that during that phone call, he was never told that there were legal papers waiting for him or that anyone had attempted to serve him with papers at that location. Lehman Decl. ¶ 16.

These arguments are off-point and unpersuasive. It is undisputed that Mr. Lehman's business address is 13101 W. Washington Boulevard, #444 Los Angeles, CA 90066, because it is listed on his business card that was provided to the process server who attempted service in Texas. Under California law, Plaintiffs properly served him via substituted service at the Los Angeles address as of August 20, 2017.

In sum, although Mr. Lehman did not make any effort to cooperate with Plaintiff's attempts to serve him, the record does not support a finding of evasion or culpable behavior that would outweigh the strong presumption in favor of a decision on the merits. Accordingly, this factor weighs in favor of setting aside the default.

### 2. Meritorious Defense

The moving party raises a meritorious defense if it "allege[s] sufficient facts that, if true, would constitute a defense: the question whether the factual allegation [i]s true is not to be determined by the court . . . ." *Mesle*, 615 F.3d at 1092 (second brackets in original) (citation and quotation marks omitted). Although this showing does not impose an "extraordinarily heavy" burden, *id.* at 1094 (citation and quotation marks omitted), the party may not rely on "mere general denial without facts to support it." *Franchise Holding II*, 375 F.3d at 926 (citation and quotation

marks omitted).

Mr. Lehman contends that the court lacks personal jurisdiction over him because he is a Texas resident, CFLA's principle place of business is in Texas, and the alleged acts of infringement occurred in Texas. Lehman Decl. ¶¶ 3, 9, 10-13. He also contends that the court lacks federal subject matter jurisdiction because the damages do not satisfy the over $75,000.00 amount-in-controversy required for diversity jurisdiction under 28 U.S.C. § 1332(a). Plaintiffs vigorously dispute Mr. Lehman's personal jurisdiction defense, devoting pages of argument to its personal jurisdiction analysis and seeking judicial notice of documents relating to CRLA. [Docket No. 42 (RJN).]

For the purposes of this motion, the court need not determine whether Mr. Lehman's factual assertions are true, or whether personal jurisdiction exists. At this stage, it need only determine whether Mr. Lehman has alleged sufficient facts that could constitute a defense. The court finds that Mr. Lehman has alleged facts that, if true, would constitute a personal jurisdiction defense. However, he has not established a meritorious subject matter jurisdiction defense. The court has federal question subject matter jurisdiction based on the federal copyright infringement claim. 28 U.S.C § 1331; 17 U.S.C. § 504.

Accordingly, this factor weighs in favor of setting aside the default.

### 3.    Prejudice

In order to establish prejudice, setting aside the default "must result in greater harm than simply delaying resolution of the case." *Mesle*, 375 F.3d at 1095 (citation and quotation marks omitted). Plaintiffs have not established prejudice. As confirmed at the hearing, the only prejudice identified by Plaintiffs is delayed resolution of this lawsuit. This is insufficient. Setting aside the default would not result in Plaintiffs incurring additional costs other than the normal costs of prosecuting a lawsuit.

Based on the foregoing facts, the court recommends that the entry of default be set aside as to Mr. Lehman.

//

//

**MOTION FOR DEFAULT JUDGMENT AGAINST MR. LEHMAN**

As the court recommends granting the motion to set aside entry of default, the court accordingly recommends that Plaintiffs' motion for default judgment as to Mr. Lehman be denied as moot.

**IV.     MOTION FOR DEFAULT JUDGMENT AGAINST CFLA**

**A.     Background**

On June 5, 2016, Ms. Cromwell discovered that a copy of the eBook had been published on the CFLA website, which offered the eBook to website visitors for free.  Compl. ¶ 17.  Plaintiffs do not have any record showing that CFLA purchased the book, nor did either Plaintiff give CFLA or any of its agents the right to distribute any portion of the work.  *Id.* ¶¶ 19-20.

On June 5, 2016, Ms. Cromwell sent a cease and desist notice to the administrator email address for CFLA, admin4@certifiedforensicloanauditors.com, requesting that CFLA remove the unauthorized publication from its website.  Compl.  ¶ 22; *id.*, Ex. 3.  Plaintiffs received a response from that email address stating that the CFLA website receives more than 10,000 views per week, and asking to keep the article on the website.  *Id.* ¶ 23; *id.* Ex. 3.  On June 23, 2016, Plaintiffs sent another cease and desist letter addressed to Mr. Lehman at the CFLA business address.  *Id.*, Ex. 4.  On June 24, 2016, Melanie Paree, the administrative agent for CFLA, wrote to Ms. Cromwell from the sales email address for CFLA, sales@certifiedforensicloanauditors.com, confirming that the article had been removed from the CFLA website.  *Id.*, Ex. 5.

On April 27, 2017, Plaintiffs filed this copyright infringement lawsuit against CFLA and Mr. Lehman arising out of their alleged unauthorized republication of the eBook on CFLA's website and Mr. Lehman's Linkedin Profile.  Compl. ¶ 46. As listed on CFLA's registration with the California Secretary of State, CFLA's agent for service of process is Edgar B. Pease, III, with a listed address of 16255 Ventura Blvd., Suite 704, Encino, CA 91436.  RJN, Ex. 1.  On May 9, 2017, Plaintiffs attempted personal service on Mr. Pease at that address.  Supp. Br., Ex. 1.  The process server spoke with a Jane Doe at that location, who informed the server that the address is for Synergy Law Group, which does not represent CFLA, and that Mr. Pease was not at that address.  *Id.*  On May 18, 2017, Plaintiffs left a copy of the summons and complaint addressed to Mr. Pease at 13101

W. Washington Blvd., Suite No. 444, Los Angeles, CA 90066, which is the business address of CFLA. [Docket No. 9.] They left the papers with Marla Jimenez, who is an individual 18 years or older, appeared to be in charge, and was informed of the contents of the papers. *Id.* Plaintiffs then mailed a copy of the summons and complaint to Mr. Pease at the same address. *Id.*

### B.    Legal Standard

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). Whether to enter a judgment lies within the court's discretion. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)) ("A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment.")

Before assessing the merits of a default judgment, a court must ensure the adequacy of service on the defendant, as well as confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds these elements satisfied, it turns to the following factors ("the *Eitel* factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted). In this analysis, "the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true." *Pepsico, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)). Nevertheless, default does not compensate for essential facts not within the pleadings and those legally insufficient to prove a claim. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

### C.    Analysis

For the reasons discussed below, the court finds that the factors weigh in favor of a finding of liability against CFLA. However, the court recommends that the motion be denied because

11

Plaintiffs have failed to establish damages or a right to attorneys' fees and costs.

### 1. Jurisdiction

Before entering default judgment, a federal court has an "affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli v. Rep. of Iraq*, 172 F.3d 707, 712 (9th Cir. 1999). In the present matter, the court has subject matter jurisdiction and personal jurisdiction over the parties.

#### a) Subject Matter Jurisdiction

Plaintiffs allege claims for relief against CFLA based on copyright infringement, unjust enrichment, and negligence. Compl. ¶¶ 40-66. The court has jurisdiction over Plaintiffs' copyright infringement claims under 28 U.S.C. § 1331 because Plaintiffs seek remedies for copyright infringement under 17 U.S.C. § 504. Moreover, district courts "have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks." 28 U.S.C. § 1338. The court has supplemental jurisdiction over Plaintiffs' related state law claims under 28 U.S.C. § 1367.

#### b) Personal Jurisdiction

Personal jurisdiction may be either general or specific. *Bristol-Myers Squibb Co. v. Sup. Ct. Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780) (2017). "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quoting *A General Look at General Jurisdiction*, 66 Texas L. Rev. 721, 728 (1988)). Either basis is sufficient for the exercise of general jurisdiction over corporations. *AM Tr. v. UBS AG*, 681 F. App'x 587, 588 (9th Cir. 2017) ("[A] corporation is typically subject to general personal jurisdiction only in a forum where it is incorporated *or* where it maintains its principal place of business." (emphasis added)).

The test for personal jurisdiction over a LLC is the same as for other corporations. *See Daimler*, 571 U.S. at 139 (testing general jurisdiction for a LLC by examining the place of organization and principal place of business); *Blocker v. Black Entm't Television, LLC*, No. 3:17-CV-01406-AC, 2018 WL 3797568, at *6 (D. Or. June 26, 2018), report and recommendation adopted No. 3:17-CV-01406-AC, 2018 WL 3795219 (D. Or. Aug. 8, 2018) ("[U]nder Daimler, the

1    state of formation and principal place of business [for a LLC] can . . . be utilized to determine

2    citizenship for purposes of general personal jurisdiction.").

3        Here, CFLA is a Limited Liability Corporation organized under the laws of California. RJN,

4    Ex. 1. As a California Limited Liability Corporation, CFLA is subject to general personal

5    jurisdiction in California.

6                    **2.    Adequacy of Service**

7        A plaintiff must serve each defendant with a summons and complaint within ninety days of

8    filing the complaint. Fed. R. Civ. P. 4(m). Federal Rules of Civil Procedure Rule 4(h) allows for

9    service of a corporation, partnership, or association "by delivering a copy of the summons and of

10   the complaint to an officer, a managing or general agent, or any other agent authorized by

11   appointment or by law to receive service of process and—if the agent is one authorized by statute

12   and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P.

13   4(h)(1)(B). Rule 4 also allows a corporation to be served "following state law for serving a summons

14   in an action brought in courts of general jurisdiction, where the district court is located or where

15   service is made." Fed. R. Civ. P. 4(h)(1)(A); Fed. R. Civ. P. 4(e)(1).

16       California law allows for service of a corporation by personally delivering a copy of the

17   summons and the complaint to a person authorized to receive service of process.   Cal. Code Civ.

18   Proc. §§ 415.10, 416.10(a).  Substituted service is allowed for corporate entities as well as for

19   individuals, allowing a serving party to

20           leav[e] a copy of the summons and complaint during usual office hours in
             his or her office or, if no physical address is known, at his or her usual
21           mailing address, other than a United States Postal Service post office box,
             with the person who is apparently in charge thereof, and by thereafter
22           mailing a copy of the summons and complaint by first-class mail, postage
             prepaid to the person to be served at the place where a copy of the summons
23           and complaint were left.

24   Cal. Code Civ. Proc. § 415.20(a). No declaration of diligence is required for a corporate entity.

25       Here, Plaintiffs properly served CFLA through substituted service. As listed on CFLA's

26   registration with the California Secretary of State, the agent for service of process for CFLA is Edgar

27   B. Pease, III, and the address listed for him is 16255 Ventura Blvd., Suite 704, Encino, CA 91436.

28

                                    13

RJN, Ex. 1. On May 9, 2017, Plaintiffs attempted personal service on Mr. Pease at that address. [Supp. Br., Ex. 1.] The process server spoke with a Jane Doe at that location, who informed the server that the address is for Synergy Law Group, which does not represent CFLA, and also that Mr. Pease was not at that address. *Id.* On May 18, 2017, Plaintiffs left a copy of the summons and complaint, addressed to Mr. Pease, at 13101 W. Washington Blvd., Suite No. 444, Los Angeles, CA 90066, which is the business address of CFLA. [Docket No. 9.] They left the papers with Marla Jimenez, who is an individual 18 years or older, appeared to be in charge, and was informed of the contents of the papers. *Id.* Plaintiffs then mailed a copy of the summons and complaint to Mr. Pease at the same address. *Id.*

"[A] defendant will not be permitted to defeat service by rendering physical service impossible." *Khourie, Crew & Jaeger v. Sabek, Inc.*, 220 Cal. App. 3d 1009, 1013 (1990). "The evident purpose of [CCP] section 415.20 is to permit service to be completed upon a good-faith attempt at physical service on a responsible person, plus actual notification of the action by mailing the summons and complaint to the appropriate party." *Id.* "Service must be made upon a person whose 'relationship with the person to be served makes it more likely than not that they will deliver process to the named party.'" *Bein v. Brechtel-Jochim Grp., Inc.*, 6 Cal. App. 4th 1387, 1393 (1992) (quoting *50 Court St. Assoc. v. Mendelson*, 572 N.Y.S.2d 997, 999 (1991)). "Statutes governing substitute service shall be 'liberally construed to effectuate service and uphold jurisdiction if actual notice has been received by the defendant.'" *Ellard v. Conway*, 94 Cal. App. 4th 540, 544 (2010) (quoting *Bein*, 6 Cal. App. 4th at 1392).

Here, Plaintiffs attempted personal service on CFLA's registered agent for service of process at the address listed on the California Secretary of State website. They were informed that the agent was not at that address. The only other address listed on the Secretary of State website is the business address for CFLA, where Plaintiffs effected substituted service on Mr. Pease. There is no other apparent address at which Mr. Pease could be contacted. Since the service address was the actual business address of CFLA, service at that address made it more likely than not that the person served would deliver process to the agent for that business. Further, there is ample evidence that CFLA received actual notice of this case. On April 28, 2017, the day after the lawsuit was filed, Melanie

14

Paree, an administrative assistance for CFLA, wrote from a CFLA email address acknowledging the existence of the lawsuit. Cromwell Decl., Ex. 2. On April 30, 2017, Mr. Lehman wrote from a CFLA email address stating that "our office intends to file RULE 11 Sanctions as against Cromwell and [Attorney] Freshman unless the frivolous District Court lawsuit is dismissed in its entirety." *Id.* Service on the business address for CFLA under these circumstances was reasonably likely to alert CFLA to the existence of this case.

Accordingly, Plaintiffs properly served CFLA via substituted service at the Los Angeles address as of May 28, 2017.

### 3. Application of the *Eitel* Factors

After entry of default, a court may grant default judgment on the merits of the case. *See* Fed. R. Civ. P. 55. The factual allegations of the complaint, except those concerning damages, are deemed to be admitted by the non-responding party. *Geddes v. United Fin. Group*, 559 F. 2d 557, 560 (9th Cir. 1977) (citations omitted); *see TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In determining whether to enter default judgment, courts consider the following factors (the *Eitel* factors):

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Here, the *Eitel* factors weigh in favor of granting Plaintiffs' motion for default judgment.

### a) Prejudice to Plaintiffs

Plaintiffs argue that in absence of a default judgment, they will be left without other recourse for recovery. MDJ at 9 (citing *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)). It is not clear that this would be the case. The court has recommended that Mr. Lehman's motion to set aside entry of default be granted, and that he be allowed to appear in the action. Plaintiffs may be able to establish liability against Mr. Lehman, and recover damages from

15

United States District Court
Northern District of California

him. However, if default judgment is denied as to CFLA, Plaintiffs' likelihood of recovering the full amount of damages may be diminished.

On balance, this factor weighs in favor of granting default judgment.

**b)    Sufficiency of the Complaint and Likelihood of Success on the Merits**

"Under an *Eitel* analysis, the merits of plaintiff's substantive claims and the sufficiency of the complaint are often analyzed together." *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010). After an entry of default, well-pleaded allegations in the complaint are deemed true, except for the amount of damages. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

### (1)    Copyright Infringement

"[T]he owner of copyright . . . has the exclusive rights to do and to authorize . . . distribut[ing] copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending . . . ." 17 U.S.C. § 106. "To establish copyright infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

Here, Plaintiffs allege that Ms. Cromwell is the co-owner of the eBook, "Pretender Lenders: Table Funding and Securitization Go Hand in Hand" and holds the copyright to the same. Compl. ¶ 7. Mr. Paatalo is the co-owner of that eBook and "shares in the profit of the eBook and revenue from additional eBook and service sales." Compl. ¶ 8. The eBook is marked as copyrighted and sold through Ms. Cromwell's website, www.infotofightforeclosure.com. Compl. ¶¶ 11-12. Plaintiffs further allege that CFLA published the eBook for free on CFLA's website, and that Plaintiffs did not "give[] CFLA, its officers, employees or agents the right to republish or distribute any portion of the book." Compl. ¶ 20. Based on the allegations in the Complaint, Plaintiffs have sufficiently stated a claim for copyright infringement against CFLA.

### (2)    Negligence

Plaintiffs also allege a negligence claim. Compl. ¶¶ 59-66. "The Copyright Act expressly

preempts any state law or claim asserting 'rights equivalent to any of the exclusive rights' granted under the Act." *Shade v. Gorman*, No. C 08-3471 SI, 2009 WL 196400, at *5 (N.D. Cal. Jan. 28, 2009). The Ninth Circuit has developed a two-part test for determining whether a state law claim is preempted by the Copyright Act: first, the court must determine whether the "subject matter" of the state law claim "falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103," and second, "whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." *Laws v. Sony Music Entertainment, Inc.*, 448 F.3d 1134, 1137-38 (9th Cir. 2006). "To survive preemption under the second element of the test, plaintiff's cause of action must have an 'extra element' which changes the nature of his action from a copyright claim." *Shade*, 2009 WL 196400, at *5.

Here, Plaintiffs' complaint summarily states that "Defendants had a duty to act in good faith and not to take any acts that would harm Plaintiffs." Compl. ¶ 60. Plaintiffs plead no facts for negligence separate from their copyright infringement claim. The essential allegation for the negligence claim is that CFLA "published a copyrighted eBook on its website," which is wholly within the subject matter of the Copyright Act. *See Dielsi v. Falk*, 916 F. Supp. 985, 992 (C.D. Cal. 1996) (finding state law negligence claim preempted by the Copyright Act because "the claim merely recharacterizes a copyright infringement claim as one for negligence."). Therefore, Plaintiffs have not stated a claim for negligence, and therefore cannot seek default judgment on that claim.

### (3)    Unjust Enrichment

Plaintiffs also allege a cause of action for unjust enrichment. Compl. ¶¶ 54-58. The elements for unjust enrichment are "receipt of a benefit and unjust retention of the benefit at the expense of another." *Elder v. Pacific Bell Telephone Co.*, 205 Cal. App. 4th 841, 857 (2012). Plaintiffs allege that CFLA "has received [profits] as a result of the unauthorized publication of the eBook," such as the "benefits it has received from leads resulting from the article; distribution or publication in their cd's, workbooks, or workshops." Compl. ¶ 56.

This claim is also preempted by the Copyright Act. *Shade*, No. C 08-3471 SI, 2009 WL 196400, at *5 (finding that a claim for unjust enrichment is preempted where the "claims rest on the same facts, and assert the same rights, as plaintiffs' copyright claim."); *Signorelli v. N. Coast*

*Brewing Co. Inc.*, No. 5:18-CV-02914-EJD, 2018 WL 5310807, at *6 (N.D. Cal. Oct. 25, 2018) (finding preemption where the facts underlying the claim were identical as those underlying the copyright infringement claims). Plaintiffs have not pleaded any additional facts that would remove the unjust enrichment claim from the purview of the Copyright Act.

The second and third *Eitel* factors are satisfied as to the copyright infringement claim only.

### c) Sum of Money at Stake

The fourth *Eitel* factor focuses on the amount of money at issue in the action. "[C]ourts should be hesitant to enter default judgment in matters involving large sums of money." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1099-1100 (N.D. Cal. 2014). "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Bd. of Tr. v. Core Concrete Const., Inc.*, No. C-11-02532-LB, 2012 WL 380304, at *1, *4 (N.D. Cal. Jan. 7, 2012). However, when "the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Id.*

Here, Plaintiffs seek a judgment in the amount of $252,558.00. This amount represents $60,000 in actual damages, $180,000 in punitive damages, and $12,558.00 in legal fees and costs. MDJ at 22. As a pleading matter, this request for damages is sufficiently tailored to the alleged misconduct, although as discussed below, Plaintiffs ultimately fail to prove up these damage amounts.

This factor weighs in favor of entry of default judgment.

### d) Possibility of Dispute as to Material Facts

When a party "fail[s] to appear or otherwise respond . . . in defaulting, defendants are deemed to have admitted all well-pleaded factual allegations contained in the complain[t]." *DirecTV v. Hoa Huynh*, 503 F.3d 847, 851 (9th Cir. 2007) (citing Fed. R. Civ. P. 55(a)). All allegations in the Complaint are taken as true, except for those regarding damages. *TeleVideo Sys., Inc.,* 826 F.2d at 917-18.

Here, the possibility of a dispute as to material facts is unlikely. CFLA was served with the complaint but failed to appear and the Clerk accordingly entered default against it. Plaintiffs served CFLA with this motion for default judgment as well as the supplemental briefing. As set forth

above, Plaintiffs' well-pleaded allegations are presumed to be true, and they adequately alleged their copyright claim against CFLA. CFLA did not appear or file any opposition to Plaintiffs' motion for default judgment. Accordingly, the record reflects CFLA's silence despite notice of the proceedings and several opportunities to respond. Therefore, the court finds that there is little possibility of dispute as to material facts.

This factor weighs in favor of granting Plaintiffs' motion.

### e) Excusable Neglect

The sixth *Eitel* factor considers whether a defendant's default resulted from excusable neglect. *Eitel*, 782 F.2d at 1472. When a defendant is properly served with the complaint and the motion for default judgment, an entry of default judgment is favored. *W. States Insulators & Allied Workers Pension Plan v. Jenco Mech. Insulation, Inc.*, No. C-11-0175 EMC, 2012 WL 1123229, at *3 (N.D. Cal. Apr. 3, 2012).

As detailed above, substituted service was effectuated on CFLA on May 28, 2017. Further, as detailed above, there is ample evidence that CFLA received actual notice of this case. Given the length of time that has elapsed since service on CFLA, and that apparent agents of CFLA acknowledge the existence of the case, it is unlikely that CFLA's failure to respond is due to excusable neglect.

This factor weighs in favor of granting default judgment.

### f) Policy in Favor of Decisions on the Merits

Despite the policy of favoring a decision on the merits, default judgment is appropriate when a defendant refuses to litigate a case. Fed. R. Civ. P. 55(b). "Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible." *PepsiCo, Inc*, 238 F.2d at 1177.

Here, CFLA did not answer Plaintiffs' complaint or otherwise appear in this action. A decision on the merits is impractical as CFLA has refused to litigate this action.

On balance, the *Eitel* factors weigh in favor of granting Plaintiffs' motion for default judgment.

#### 4. Remedies

Although the factual contentions of the operative complaint are accepted as true when determining the liability of a defaulting defendant, this rule does not apply to statements regarding damages. *See TeleVideo*, 826 F.2d at 917-18. To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit. *Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005); *see PepsiCo, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc.*, 826 F.2d at 917-18). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54.

##### a) Actual Damages

Under 17 U.S.C. 504(b), "[t]he copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." "In a copyright action, a trial court is entitled to reject a proffered measure of damages if it is too speculative." *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 513 (9th Cir. 1985). "Although uncertainty as to the amount of damages will not preclude recovery, uncertainty as to the fact of damages may." *Id.* (citing *Universal Pictures Co. v. Harold Lloyd Corp.*, 162 F.2d 354, 369).

Plaintiffs are not seeking damages based on the alleged profits obtained by CFLA due to its infringing activity. Instead, Plaintiffs seek actual damages in the amount of $60,000 pursuant to 17 U.S.C. § 504(b). MDJ at 20. Plaintiffs base their damages on the value of their investment in the eBook; they multiply the "billing rate" per plaintiff ($150 per hour each) by the number of hours they spent creating the eBook (over 200 hours each). *Id.*; Paatalo Decl. ¶ 4, 6; Cromwell Decl. ¶ 4, 5.

At the hearing on November 8, 2018, the court ordered supplemental briefing to support Plaintiffs' theory that they may seek the amount of their investment in creating the infringed product as actual damages for infringement. [Docket No. 69.] On November 30, 2018, Plaintiffs filed a supplemental brief. Supp. Br.

Plaintiffs' supplemental brief attempts to justify their requested damages under the market value theory of actual damages. *See* Supp. Br. at 3 (citing *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 566 (7th Cir. 2003) and *Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002)). The market value approach looks at situations "where the infringer could have bargained with the copyright owner to purchase the right to use the work." *Jarvis v. K2 Inc.*, 486 F.3d 526, 533 (9th Cir. 2007). Based on this hypothetical negotiation, actual damages are "what a willing buyer would have been reasonably required to pay to a willing seller for plaintiffs' work." *Frank Music Corp.*, 772 F.2d at 512 (quoting *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1174 (9th Cir. 1977)).

Plaintiffs' requested damages do not fit into this theory. *Jarvis* cites with approval *On Davis v. The Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2011), which states that, under the market value approach, "[t]he question is not what the owner would have charged, but rather what is the fair market value." *See Jarvis*, 486 F.3d at 533. The "market value approach is an objective, not a subjective, analysis." *Mackie v. Rieser*, 296 F.3d 909, 917 (9th Cir. 2002). Accordingly, fair market value cannot be determined merely by the value to the copyright holder, including their investment into the infringed product.

Plaintiffs cite no case where a court awarded copyright damages based on the actual cost of product development. This is not surprising, because Plaintiffs' theory cuts against the grain of Ninth Circuit caselaw. The Ninth Circuit has determined that "a causal link between the infringement and the monetary remedy sought is a predicate to recovery of both actual damages and profits." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004), *as amended on denial of reh'g and reh'g en banc* (Oct. 25, 2004). "[A] plaintiff in a § 504(b) action must establish this causal connection, and that this requirement is akin to tort principles of causation and damages." *Id.* There is no causal link between CFLA's infringing activity and the cost of development of the infringed product.

For all the reasons offered above, the court recommends that Plaintiffs' request for actual damages be denied.

//

### b)    Punitive Damages

Plaintiffs claim $180,000 in punitive damages under California Civil Code § 3294 based on their negligence claim.  As stated above, Plaintiffs' state law claim for negligence is preempted by the Copyright Act, and "the Copyright Act's remedial scheme . . . provides the exclusive remedies for copyright infringement."  *Nintendo of Am., Inc. v. Aeropower Co.*, 34 F.3d 246, 251 (4th Cir. 1994); *see also Sony Corp. of America v. Universal City Studios*, 464 U.S. 417, 430 (1984) ("The remedies for infringement are only those prescribed by Congress.") (internal quotations omitted).

The court therefore recommends that Plaintiffs' request for punitive damages be denied.

### c)    Injunctive Relief

"Any court having jurisdiction of a civil action arising under [the Copyright Act] may . . . temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C.A. § 502(a).  "[I]njunctive relief to prevent copyright infringement is available as an equitable remedy in the court's discretion."  *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 994 (9th Cir. 2011).  "[A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Flexible Lifeline Systems, Inc. v. Precision Lift, Inc.*, 654 F.3d 989 (9th Cir. 2011) (applying *eBay* to copyright infringement cases).  "If granted, an injunction must be narrowly tailored to remedy only the harms that the plaintiff specifically identifies, rather than to enjoin all possible breaches of the law."  *Folkmanis, Inc. v. Uptown Toys LLC*, No. 18-CV-00955-EMC, 2018 WL 4361140, at *5 (N.D. Cal. Sept. 13, 2018) (citing *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004)).

Plaintiffs do not offer any analysis under the four-factor test laid out in *eBay*.  Additionally, Plaintiffs agree that the unauthorized publication was removed before the lawsuit was filed.  Compl. ¶ 30.  Although they state that they "have been unable to determine the extent of Defendants [*sic*]

use," they do not provide any evidence of continued infringing activity. *See* MDJ at 21. Nor is there evidence that CFLA will infringe the eBook again in absence of an injunction. *See In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007) ("Speculative injury cannot be the basis for a finding of irreparable harm."); *see also Folkmanis*, 2018 WL 4361140 at *5 (denying injunctive relief on motion for default judgment because the plaintiff had "no basis to believe" that the infringer, who had since cured its violation, would infringe again); *Glynn v. Cigar Store, Inc.*, No. 18-CV-00031-MMC, 2018 WL 3145683, at *5 (N.D. Cal. June 27, 2018) (holding that the plaintiff failed to show irreparable harm absent injunctive relief where the defendant had voluntarily ceased infringing activity after receiving a demand letter).

Furthermore, Plaintiffs' proposed injunctive order contains the following terms:

> Defendants, Andrew P. Lehman and Certified Forensic Loan Auditors, their employees, agents, and representatives are permanently enjoined from quoting or promoting the eBook in any manner.
>
> Defendants are ordered to remove any reference to the eBook or contents therein that are on their website, social media, marketing materials, any workbook, cd or webinar and any other media which Defendants rely no later than _____, 2018.

[Docket No. 38-4.] The requested relief is too broad and encompasses legal use of and reference to the eBook. The purpose of injunctive relief is to enjoin future violations of the law, not prohibit lawful references to copyrighted works. *See Price*, 930 F.3d at 1117.

Accordingly, the court recommends that injunctive relief against CFLA be denied.

### d) Attorneys' Fees and Costs

"In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. "In any action [under the Copyright Act] . . . no award of statutory or attorney's fees, as provided by sections 504 and 505, shall be made for . . . any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." 17 U.S.C. § 412. The Ninth Circuit has explained the purpose of denying statutory

damages and attorney's fees awards under section 412 as follows:

> We also recognize that § 412 is designed to implement two fundamental purposes. First, by denying an award of statutory damages and attorney's fees where infringement takes place before registration, Congress sought to provide copyright owners with an incentive to register their copyrights promptly. *See* H.R.Rep. No. 94–1476, at 158 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 5659, 5774 ("Copyright registration ... is useful and important to users and the public at large ... and should therefore be induced in some practical way."). Second, § 412 encourages potential infringers to check the Copyright Office's database.

*Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 700 (9th Cir. 2008).

Here, the eBook was published in December 2015. MDJ at 7. Plaintiffs admit that the eBook was not registered at the time of the infringing act. MDJ at 19. There is no evidence that the eBook has ever been registered.

Accordingly, Plaintiffs are not entitled to attorneys' fees and costs under section 505.

## V. CONCLUSION

Based on the foregoing facts and analysis, the court recommends that Mr. Lehman's motion to set aside the default be granted. The court recommends denying as moot Plaintiffs' request for judicial notice in support of their opposition to the motion to set aside, and granting Plaintiffs' request for judicial notice in support of their motion for default judgment. The court further recommends that Plaintiffs' motion for default judgment be denied as to both Defendants.

Immediately upon receipt of this order, Plaintiffs shall serve a copy of this order on CFLA and file a proof of service with the court. Any party may file objections to this report and recommendation with the District Judge within 14 days of being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a); N.D. Civ. L.R. 72-2.

**IT IS SO ORDERED.**

Dated: January 10, 2019



Donna M. Ryu
Judge Donna M. Ryu
United States Magistrate Judge